(11)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8287 | **DATE** | 11/4/2002 |
| **CASE TITLE** | U.S.A. ex rel: Jackie Schultz vs. Cancer treatment Centers etc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss is granted as to counts VI and X and denied as to the remainder of relator's claims. Status hearing set for November 21, 2002 at 9:15am.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | NOV 07 2002 | |
| | Notified counsel by telephone. | | date docketed | 24 |
| ✓ | Docketing to mail notices. | | G.Y. | |
| | Mail AO 450 form. | CLERK U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 NOV -6 AM 8: 48 | date mailed notice | |
| WAH | courtroom deputy's initials | FILED-ED-10 | Date/time received in central Clerk's Office | mailing deputy initials |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS, ex rel., JACKIE SCHULTZ, | ) ) ) ) | **DOCKETED** |
| | ) | NOV 0 7 2002 |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 99 C 8287 |
| CANCER TREATMENT CENTERS OF AMERICA, et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff-relator Jacqueline Grandeau, f/k/a Jacqueline Schultz (relator) filed a *qui tam* complaint against defendants on December 20, 1999. On July 22, 2002, relator filed a second amended complaint adding seven counts arising from her termination by defendant Cancer Treatment Centers of America (CTCA). Defendants filed a motion to dismiss or stay the action pending arbitration. For the following reasons, defendants' motion is granted in part and denied in part.

## BACKGROUND

The facts are taken from relator's complaint. Defendants operate cancer centers throughout the United States, including the Midwest Regional Medical Center (MRMC) in Zion, Illinois, where relator worked from 1997 until she was terminated on May 8, 2000. Relator is a licensed accredited records technician and was hired as the quality assurance coordinator for defendant Professional Corporation of Illinois (PCI), a physician's group associated with MRMC. She was later promoted to the position of business manager for PCI

and MRMC. Through her employment relator gained direct knowledge of defendants' billing practices, including those for hospital services under Medicare Part A and physician and laboratory billing under Medicare Part B.

Relator alleges that defendants acted together to fraudulently bill for services provided under Medicare insurance, resulting in a substantial loss to the governments of the United States and the State of Illinois. Defendants allegedly billed too many hours, billed for services that were not performed, and billed for physicians who never performed any work, along with numerous other improper billing practices.

Relator further alleges that she was terminated improperly because she was willing to bring these allegations to the government's attention. She claims that she was terminated in violation of federal and state laws protecting "whistleblowers" from retaliation. Finally, she alleges that she was terminated in violation of the Family and Medical Leave Act (FLMA) for being absent from work beginning in November 1999 because of a serious health condition.

## DISCUSSION

Relator's amended complaint consists of ten counts, three of which are brought on behalf of the United States and Illinois governments, alleging that defendants falsely filed Medicare claims, and seven of which arise from her termination on May 8, 2000. Defendants argue that relator's action should be dismissed because she agreed to arbitration when signing her employment contract on July 24, 1997.

We must determine whether the arbitration agreement is applicable to relator's claims and, if so, whether it is enforceable. Relator's employment contract reads, in relevant part:

5. <u>Arbitration</u>. If any dispute arises between the parties hereto under or concerning this Agreement or the terms hereof, the parties hereto agree to first

submit such issue to arbitration in accordance with the terms of this Section. In the event of such a dispute, one representative selected by the Company and one representative selected by Employee shall appoint an arbitrator to resolve the issue. Each party's representative shall present the argument of his or her party to such arbitrator. The arbitrator shall choose one (1) of the two (2) positions so presented. The arbitration shall otherwise proceed in accordance with the then existing rules of the American Arbitration Association. The decision of the arbitrator shall be made within thirty (30) days following the close of the hearing.

Arbitration contracts, such as this one, are governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (FAA), which provides, in part, that an arbitration clause "shall be valid, irrevocable, and enforceable save upon such grounds as exist in law or equity for the revocation of any contract." 9 U.S.C. § 2.

"Whether a particular issue is subject to arbitration is a matter of contract interpretation, because 'a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'" Kiefer Specialty Flooring, Inc. v. Tarkett, Inc., 174 F.3d 907, 909 (7th Cir. 1999) *quoting* United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). Still, a strong federal policy in favor of arbitration exists and, as such, any disputes concerning the scope of the arbitrable issues should be resolved in favor of arbitration. *Id.* This is particularly true once it becomes clear that the parties have a contract that provides for arbitration of some issues between them. Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc., 293 F.3d 1023, 1029-30 (7th Cir. 2002).

Qui Tam claims

It is clear that relator and defendants agreed to arbitrate certain disputes arising from relator's employment. It is equally clear that the parties did not agree to arbitrate a *qui tam* action arising from the relationship. We need only look at the language of the contract

requiring arbitration "if any dispute arises between the parties hereto." The dispute underlying relator's false claims allegations is between defendants and the governments of the United States and Illinois, not between the defendants and relator. We can say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>United Steelworkers</u>, 363 U.S. at 582-83.

<u>Wrongful Termination Claims</u>

The wrongful termination claims are a closer call. Relator presents a number of arguments as to why we should decline to enforce the arbitration agreement.

First, relator argues that the entire agreement is vague and unenforceable. We disagree. The arbitration clause establishes a specific process for choosing the arbitrator and a specific set of rules for the arbitrator to follow.

Second, relator contends that the clause is unenforceable because it is binding only on defendant CTCA as relator's employer. Again, we find this unconvincing. The language of the agreement clearly covers all "corporations or other entities controlled by, controlling or under common control with Integrated Medical Delivery Corporation." The arbitration agreement covers all defendants against whom relator could possibly prevail on a claim arising from her employment.

Third, while arbitration may, in some circumstances be costly, plaintiff does not make the required showing by submitting evidence establishing that she would be forced to bear the costs of the arbitration and that those costs would be prohibitive. *See* <u>Green Tree Fin. Corp. - Alabama v. Randolph</u>, 531 U.S. 79, 90-91. Moreover, while the American Arbitration Association (AAA) establishes procedures to distribute the costs of arbitration, defendants

here agree to pay all fees and costs under the AAA in order to resolve relator's claims.

Finally, we do not believe that this arbitration agreement is against public policy in any way. As stated above, there is a strong public policy in favor of handling disputes through arbitration rather than in-court litigation, especially where the parties have contractually agreed to do so.

That being said, we are not convinced that relator's wrongful termination claims fall within the scope of this agreement. The language of the contract in question defines the scope of disputes subject to arbitration. E.E.O.C. v. Waffle House, Inc., 122 S. Ct. 754, 762 (2002). Nothing in the FAA or anywhere else requires a court to compel arbitration of any issues, by any parties, that are not covered by the agreement. *Id.*

While we read the arbitration *clause* liberally, we must still be able to find that the parties intended for claims of this type to be covered by the agreement. Basic contract law dictates that our purpose in construing the contract is to give effect to the mutual intent of the parties at the time that they signed the contract. *See* Bock v. Computer Associates Intern., Inc., 257 F.3d 700 (7th Cir. 2001). We find that the intent of the parties when signing this agreement was to protect confidential information acquired by relator during her employment, not to establish blanket terms to define relator's employment.

While the ultimate resolution of relator's claims (both the *qui tam* actions and the wrongful termination claims) may require us to look at confidential information that would be the subject of this agreement, relator's claims neither arise under nor concern the agreement or its terms. If defendants had filed suit against relator to stop her from using this information, our answer would be different, but that is not the case.

## Counts VI and X

Defendants also argue that count VI and count X of relator's complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Relator does not address these arguments in her brief and we agree with defendants.

Count VI alleges wrongful termination in violation of public policy. Relator must show that her discharge contravenes a clear mandate of public policy. United States, ex rel. Chandler v. Hektoen Institute for Medical Research, 35 F.Supp. 2d 1078, 1082 (N.D. Ill. 1999). Plaintiff here fails to identify a source of public policy. Moreover, even if she could identify a source of public policy, Illinois courts decline to extend the tort of wrongful discharge to cases, as here, where statutory remedies already serve as adequate deterrents to the alleged misconduct. *See id.* at 1083. Both the False Claims Act and the Illinois Whistleblower Reward and Protection Act provide relator with protection and act to deter the alleged wrongdoings.

Count X alleges breach of contract by defendants by terminating her medical benefits. Even if plaintiff could establish a contract relationship here, which we doubt, relators's state law contract claims here seek to recover the same medical benefits that are the subject of her ERISA claims. 29 U.S.C. § 1144(a) provides that ERISA supersedes all state law actions "insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. We should read this preemption provision broadly to protect the integrity of the statutorily regulated benefit plans. *See* Pohl v. National Benefits Consultants, Inc., 956 F.2d 126, 128 (7th Cir. 1992). We find that the ERISA claims allow relator to fully litigate her breach of contract claims and those state law claims are preempted by the federal statute.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted as to counts VI and

X and denied as to the remainder of relator's claims.


_James B. Moran_
JAMES B. MORAN
Senior Judge, U. S. District Court

___Nov. 4___, 2002.