Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8287 | **DATE** | 2/24/2004 |
| **CASE TITLE** | USA ex rel. JACQUELINE GRANDEAU vs. CANCER TREATMENT CENTERS OF AMERICA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 2 5 2004 | |
| | Notified counsel by telephone. | | date docketed | 98 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| LG courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA and the )
STATE OF ILLINOIS, ex rel JACQUELINE )
GRANDEAU, )
)
Plaintiff-Relator, )
)
vs. ) No. 99 C 8287
)
CANCER TREATMENT CENTERS OF )
AMERICA, et al., )
)
Defendants. )

DOCKETED

FEB 9 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff-relator Jacqueline Grandeau (plaintiff) brought this *qui tam* action on behalf of the governments of the United States and the State of Illinois, alleging fraudulent billing practices by the defendants and claiming that defendants unlawfully terminated her in retaliation for her investigation. Defendants filed a motion seeking summary judgment as to the unlawful retaliation claims, counts IV, V and VI. For the following reasons, defendants' motion is granted.

## BACKGROUND

From August 1997 to May 2000, plaintiff was employed by defendant Midwest Regional Medical Center (MRMC) in Zion, Illinois, of which defendant Cancer Treatment Centers of America (CTCA) is the corporate parent. She was responsible for coding and assisting in the billing for hospital and physician services. Without the proper codes, MRMC and CTCA could not collect payment from government insurance programs. Shortly after she started working for MRMC, plaintiff alleges that she discovered fraudulent billing practices by defendants. She

claims that she went to her supervisors to express her concerns about these practices and warned them that the activity was illegal.

In November 1999, plaintiff took medical leave from MRMC, as allowed by the Family and Medical Leave Act (FLMA). She took additional FLMA leave in January, February and March of 2000. MRMC's records (which plaintiff disputes) indicated that as of April 21, 2000, plaintiff had exceeded her FLMA leave allowance by 48 hours. In March 2000, plaintiff moved to Tucson, Arizona. In April 2000, plaintiff married Michael Grandeau in Tucson and began working for Tucson General Hospital in Arizona and requested that her mail be forwarded to an Arizona address, where she was living with her husband. Although she was originally scheduled to return to work on May 8, 2000, she arranged with Susan Thomas, before that date, that instead of physically returning to work they would communicate by phone to discuss her plans for returning to MRMC. This planned conversation never took place and defendants decided two days later to officially terminate plaintiff's employment, stating that she took excessive leave and failed to return to her job as scheduled. While she claims to have tried, twice, unsuccessfully, to speak with Thomas on May 8, plaintiff made no further attempt to contact anyone at MRMC until after she received mailed notice of her termination, on May 18, 2000.

## DISCUSSION

Our function in ruling on a motion for summary judgment is merely to determine if there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Only if the evidence on file shows that no such issue exists, and that the moving party is entitled to judgment as a matter of law, will we grant the motion. Celotex Corp. v

Catrett, 477 U.S. 317, 322-23 (1986); Bennett v. Roberts, 295 F.3d 687, 694 (7th Cir. 2002).

The federal False Claims Act (FCA), 31 U.S.C. § 3730(h), and the Illinois Whistleblower Reward and Protection Act (IWRPA), 740 ILCS 175/4(g), provide protection to employees in Grandeau's position from the danger of unlawful retaliation by employers for their participation in false claims investigations. Likewise, Illinois law protects employees from discharges that violate clearly established public policy. Stebbings v. University of Chicago, 726 N.E.2d 1136, 1140 (Ill. App. 1st Dist. 2000). To prevail, plaintiff must demonstrate that (1) she was engaging in protected activity; (2) defendants knew of this activity; and (3) her termination was motivated by a desire to retaliate for the protected activity. *See* Brandon v. Anesthesia & Pain Management Associates, Ltd., 277 F.3d 936, 944 (7th Cir. 2002); U.S. *ex rel* Humphrey v. Franklin-Williamson Human Services, Inc., 189 F. Supp. 2d 862, 867 (S.D. Ill. 2002) (holding that because the language in the federal and state statutes is nearly identical, FCA case law should provide the standards for IWRPA claims); Tod A. Lewis, The Illinois Whistleblower Reward and Protection Act and Its Qui Tam Provisions, 88 Ill. B.J. 392 (2000); Stebbings, 726 N.E.2d at 1140.

Although it is far from clear that defendants actually knew that plaintiff was participating in an FCA-related investigation, there is enough evidence of notice to withstand a summary judgment motion on that issue. A plaintiff may prove notice either expressly or implicitly. Luckey v. Baxter Healthcare Corp., 2 F. Supp. 2d 1034, 1054 (N.D. Ill. 1998), *aff'd* 183 F.3d 730 (7th Cir. 1999). Plaintiff does not claim that she actually told her employer that she was thinking about filing an FCA lawsuit, but instead presents evidence indicating that her supervisors should have realized that such a suit was possible, even though she tried to keep her

actual investigatory activities secret. Specifically, plaintiff claims that she repeatedly told her supervisors that their billing practices were illegal and refused to enter certain codes. She allegedly warned her employers that they could go to jail for submitting fraudulent claims and was actually told by defendant Roger Cary to stop using the word "fraud" when discussing the claims.

In Luckey, the plaintiff voiced concerns about her employer's handling and testing procedures. 2 F. Supp. 2d at 1041. She frequently talked to co-workers about these concerns and her regular complaints apparently irritated her supervisors. *Id.* She even questioned the legal ramifications of the company's activity. *Id.* at 1041-42. The district court found that this conduct was insufficient to notify plaintiff's employers of FCA-protected activity. *Id.* at 1055-56. Judge Castillo determined that the plaintiff had never specifically mentioned "fraud" or the possibility of a *qui tam* lawsuit in such a way that the employers should have realized that such a suit was likely. *Id.*

While the conduct here is similar to that of the plaintiff in Luckey, Grandeau's statements were less ambiguous. Her frequent usage of the word "fraud" and her concerns about legality could have forewarned defendants of a potential FCA lawsuit. Even if the investigation of potential fraudulent billing was part of plaintiff's job (a contention which she denies), her ongoing complaints about defendants' potentially illegal billing practices would have put them on notice of a potential investigation.

Plaintiff's claim fails since she does not produce evidence that her termination was in any way motivated by defendants' knowledge of her protected activity. In Stone v. City of Indianapolis Public Utilities, 281 F.3d 640, 643-44 (7th Cir. 2002), Judge Posner enunciated a

new rule for proving retaliation in this circuit.[1] Believing that requiring a plaintiff to prove an actual causal link was too stringent, the court stated that a plaintiff in an unlawful retaliation suit may, alternatively, demonstrate that she was treated differently from a similarly situated employee. *Id.* at 644. Specifically, Judge Posner wrote that the second route requires the plaintiff to show that *only* she, and not any other similarly situated employee, was subject to the adverse employment action even though she was performing in a satisfactory manner. *Id.*

Plaintiff does not demonstrate that when she was discharged she was performing satisfactorily. The record clearly shows that plaintiff was absent from work for significant periods of time in late 1999 and early 2000. She admits that she had used leave in excess of the twelve weeks allowed by FLMA. In fact, by the time of her termination, plaintiff had relocated to Arizona to live with her husband and had already started a new job there. She admits that she had no plans to return to Chicago or to her job at MRMC. The facts establish that defendants acted reasonably (and not in retaliation) when they finally terminated plaintiff's employment. In response, plaintiff offers no evidence, other than her suspicion, that her discharge was related to her protected activities. This alone is not sufficient to defeat a summary judgment motion. *See* Luckey, 2 F. Supp. 2d at 1057.

Moreover, the evidence shows that plaintiff was not treated differently from similarly situated employees. Another MRMC employee, Selena Vega, took her twelve weeks of leave as allowed by FLMA. Defendants then allowed Vega to take additional personal leave, but set

---

[1] We note that there may be some problems in applying the Stone rule to FCA claims. Unlike many retaliation claims, the defendants' knowledge of plaintiff's activity will inevitably be tied to the question of whether a termination was motivated by that activity. In fact, we have not found any cases applying the Stone standard to an FCA retaliation claim. Judge Manion, however, stated that Stone is the rule to be followed for unlawful retaliation claims, without distinguishing between different types of cases. Rogers v. City of Chicago, 320 F.3d 748, 754-55 (7th Cir. 2003). In any case, plaintiff fails to present sufficient evidence so as to survive a summary judgment motion under Stone, or the old rule.

a date for her to return to work. When Vega failed to return, she was discharged. Plaintiff claims that she was treated differently because defendants let Vega take personal leave after the FLMA leave, but gave plaintiff no such consideration. In fact, plaintiff had exceeded her FLMA leave entitlement by 48 hours as of April 21, 2000, but was not terminated until May 10, 2000, after she failed to return to work. While the actual amount of leave taken by Grandeau and Vega may have varied slightly, defendants establish that they treated the employees in essentially the same manner and did not retaliate against plaintiff by firing her.

Plaintiff's common law claim for retaliation in violation of public policy fails for the same reason. In her third amended complaint, plaintiff alleges that she had a dispute with her employers regarding a claim by Blue Cross/Blue Shield that it had been over-billed by defendants in the amount of $1.4 million. Though this dispute never led to litigation, such retaliation by defendants would potentially violate Illinois public policy. For the reasons stated above, however, plaintiff fails to prove the final element of such a claim, that she was fired *because* of her actions. Instead, the record states that defendants had a sufficient non-pretextual reason for the termination, and that plaintiff was not treated any differently from other similarly situated employees.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

Feb. 24, 2004.