# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8287 | **DATE** | 11/10/2004 |
| **CASE TITLE** | USA ex rel. JACKIE GRANDEAU vs. CANCER TREATMENT CENTERS OF AMERICA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Relator's motion to dismiss is denied as to Count I and granted as to Counts II and III. Status hearing is set for December 9, 2004 at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | NOV 1 2 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 123 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 NOV 10 PM 6:19 | | |
| LG | courtroom deputy's initials | FILED | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF ILLINOIS *ex rel.* JACKIE GRANDEAU, | )<br>)<br>) |
| Plaintiff-Relator, | )<br>) |
| vs. | ) No: 99 C 8287 |
| CANCER TREATMENT CENTERS OF AMERICA, *et al.*, | )<br>)<br>) |
| Defendants. | ) |

DOCKETED
NOV 12 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff-relator Jacqueline Grandeau (relator) brought this *qui tam* action on behalf of the governments of the United States and the State of Illinois, and alleges that defendant Cancer Treatment Centers of America (CTCA) engaged in fraudulent billing practices in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733 (FCA). Defendant Midwest Regional Medical Center (MRMC), a subsidiary of CTCA, filed a counterclaim against relator in which it claims relator is liable for breach of fiduciary duty, breach of a confidentiality agreement and conversion. These claims arise from relator's response to a subpoena issued by the government during its investigation of suspected healthcare fraud committed by defendant. Relator filed a motion to dismiss defendant's counterclaims on statutory and policy grounds, and the government has supported that motion by way of an *amicus curiae* submission. For the following reasons, relator's motion is granted in part and denied in part.

## BACKGROUND

For purposes of this order the factual background is taken from defendant's counterclaim. MRMC operates a hospital in Zion, Illinois, and in 1997 it hired relator to serve

as a Quality Assurance Coordinator. In that role, relator's responsibilities included medical coding, which involves working with billing documents and assigning the proper medical treatment codes to the services that patients actually received. In carrying out her medical coding duties, relator was privy to confidential documents, and in a confidentiality agreement she agreed not to disclose proprietary or confidential information "for any reason or purpose whatsoever." Relator's access to confidential documents increased when she was promoted in November 1998.

In or around early March 1999, relator received a subpoena issued by the United States Department of Justice (DOJ). The subpoena was mailed to her at defendant's business, addressed to her as "QA Coordinator, PCI," and requested production of documents necessary for the DOJ's investigation of federal health care offenses, such as "Medical records and billing records relating to suspected billing discrepancies, including excessive charges and improper billing." Defendant claims that relator never told any supervisor, director, officer or coworker that she received the subpoena. Neither did she disclose to anyone at MRMC that she had collected, copied and delivered to the government numerous documents containing confidential information. Defendant further alleges that relator collected and produced to the government numerous confidential and proprietary documents that were outside the scope of the subpoena.

On December 20, 1999, relator filed a *qui tam* action, which remained under seal pursuant to the FCA. After reviewing the action, the government declined to intervene on March 13, 2002, and immediately thereafter Judge Aspen ordered the complaint be unsealed and served on defendant. Defendant filed its counterclaim on March 7, 2003, and relator

moved to dismiss the counterclaim on April 30, 2003. On April 2, 2004, the government, as *amicus curiae*, filed a memorandum in support of relator's motion to dismiss.

Defendant's counterclaim contains three counts. First, defendant alleges that relator breached her fiduciary duty by failing to disclose her receipt of and response to the subpoena. Defendant claims that relator's breach provided grounds for her termination and that it also led to the substantial sums it spent in the defense of the *qui tam* action. Second, defendant claims that by secretly responding to the subpoena, relator breached the confidentiality agreement. As in Count I, defendant claims that relator could have been fired for her breach of the confidentiality agreement, and that her breach led to substantial litigation expenses. Lastly, defendant asserts that the subpoena was addressed to relator in her official capacity and that by secretly responding to it she converted the subpoena for her own benefit. For this final count, defendant seeks the same relief that it requests in Counts I and II.

In her motion to dismiss, relator insists that defendant has brought its counterclaim in retaliation for her *qui tam* action, and that allowing the counterclaim to proceed is contrary to the FCA's policy of encouraging *qui tam* actions and would chill future whistleblowers from shedding light on wrongdoings. The government asserts that policy interests, specifically those promoting truthful responses to subpoenas and protecting whistleblowers from retaliation, render the confidentiality agreement unenforceable. Relator also asserts that defendant fails to state a claim for conversion because subpoena is not property that is subject to conversion.

## DISCUSSION

In deciding a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), we assume the truth of all well-pleaded allegations, making all inferences in the nonmovant's favor. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir. 1994).

The court should dismiss a claim only if it appears that the nonmovant can prove no set of facts in support of its claim that would entitle it to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). Complaints need not detail the specific facts involved in a claim and may plead conclusions. <u>Higgs v. Carver</u>, 286 F.3d 437, 439 (7th Cir. 2002).

Prior to reaching defendant's counts, we must discuss several issues raised by relator and the government. The most important and complicated matter is the relationship between defendant's counterclaim and the FCA. We recognize the importance of the FCA, the purpose of which is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. 99-345, at 1. Achieving that goal requires the "coordinated effort" between private citizens and the government. *Id.* at 2. From targeting massive contractor fraud during the Civil War to halting healthcare fraud today, the ability of individuals to serve as private attorneys general and to protect the interests of the government has and continues to serve vital purposes.

Relator and the government focus on these policy concerns when they forcefully contend that defendant's counterclaims would chill future whistleblowers. In making that argument, relator and the government fail to distinguish relator's response to the subpoena from her filing of the *qui tam* action. Defendant could bring its counterclaim independent of relator's *qui tam* action and relator could have filed the *qui tam* action even if she disclosed the subpoena and made no attempt to respond to it. In its response to the government's *amicus* submission, defendant emphasizes that it does not assert that relator was required to inform it of her contemplated *qui tam* action, and its counterclaims are the direct result of relator's response to the subpoena. The FCA does encourage and protect individuals who file *qui tam* actions, but nowhere does it condone or shield individuals who receive and respond to

subpoenas that are not theirs to address. Further, the purpose of FCA provisions that do provide for secrecy, namely § 3730(b), is to allow the government to evaluate a *qui tam* complaint without alerting the target. *See* S. Rep. 99-345, at 23-24. That provision does not apply to defendant's counterclaim, which focuses on relator's response to the subpoena, an event that occurred before her *qui tam* complaint.

Further illustrating that the FCA has limited relevance to defendant's counterclaims is § 3730(h), the FCA's whistleblower protection provision that relator and the government contend bars defendant's counterclaim. The facts here are different than the typical § 3730(h) pattern, in which an employee takes protected action, the employer has notice of that action, in response to that action the employer takes some type of adverse action against the employee, and then the employee seeks to recover for the unlawful retaliation under § 3730(h). Here, relator took protected action. Defendant had no notice of that action and it also took no discriminatory response toward relator. Thus, the government's contention that § 3730(h) protects relator's conduct is misplaced. But the difference in factual patterns is not the only distinguishing factor between this case and other cases invoking § 3730(h). As cases applying § 3730(h) illustrate, the purpose of that subsection is not to supply employees with immunity but, instead, to enable them to seek compensation for retaliation. *See*, Fanslow v. Chicago Manufacturing Center, 384 F.3d 469 (7th Cir. 2004); Brandon v. Anesthesia & Pain Mgt. Associates, 277 F.3d 936, 943-44 (7th Cir. 2002); Neal v. Honeywell, 33 F.3d 860 (7th Cir. 1994); Brooks v. United States, 383 F.3d 521, 524 (6th Cir. 2004); United States ex rel. Wilson v. Graham County Soil & Water Conservation District, 367 F.3d 245 (4th Cir. 2004). We have already granted summary judgment for defendant on relator's unlawful retaliation claims. *See* United States ex rel. Grandeau v. Cancer Treatment Centers of America, 2004 U.S. Dist.

LEXIS 2799, 2004 WL 755893 (N.D. Ill.). In sum, § 3730(h) does not help relator because she attempts to fashion a shield out of a provision that is designed as a sword and we are unwilling to interpret the statute in that manner. The FCA's protections are broad, but they are not infinite. We stretch those protections too far by imposing them on this situation, in which the government serves a subpoena on an individual employee who then collects the desired information and then, under shroud of secrecy, delivers documents to the government. By taking this secretive approach, the government has stripped defendant of its right to address the subpoena, either by providing the requested documents, seeking to quash it or taking another approach.

In addition to portraying defendant's counterclaim as an assault on her exercise of rights protected by the FCA, the government contends that 18 U.S.C. § 3486(d) shields relator from liability for her good faith compliance with the subpoena.[1] Section 3486(d) provides:

> Notwithstanding any Federal, State, or local law, any person, including officers, agents, and employees, receiving a subpoena under this section, who complies in good faith with the subpoena and thus produces the materials sought, shall not be liable in any court of any State or the United States to any customer or other person for such production or for nondisclosure of that production to the customer.

Defendant retorts that this section is inapplicable for several reasons. It first asserts that relator did not act in good faith when she secretly responded to the subpoena. It next argues that the statute only protects those who fail to disclose production from suits brought by "customers" and it is an employer, not a customer. Disagreeing with that interpretation, the government posits that since subpoena recipients who produce documents are immune from

---

[1] It is noteworthy that the government, according to its own memorandum, sought the subpoena under 18 U.S.C. § 3486 instead of through 31 U.S.C. § 3733, which provides for civil investigative demands tailored for FCA investigations. This fact supports our view that defendant's counterclaim does not directly implicate either the FCA or relator's *qui tam* action.

suits brought by customers and other persons, it would be inconsistent to expose to liability those who fail to disclose document production to customers, but not other persons. We see no such inconsistency and find that the statute is not susceptible to the government's interpretation. Section 3486 involves administrative subpoenas for investigations of healthcare offenses, during which the government seeks and obtains the medical records of customers, or patients. Under § 3486(d), the person who produces the documents containing a patient's information but does not inform the patient of that disclosure, cannot then be held liable by the patient. Statutory interpretation always begins with the plain language of the statute and we "assume that Congress intended what it wrote." United States v. Lange, 312 F.2d 263, 271 (7th Cir. 2002) (Ripple, J., concurring); Old Ben Coal Co. v. Dir., 292 F.3d 533, 539 (7th Cir. 2002). For nondisclosure cases, Congress provided immunity against suits brought by customers, but not other persons, and defendant is not a customer. Without any legislative history to explain Congress's intent, we will not adopt the government's speculation about that intent, particularly when the view it promotes contradicts the unambiguous plain language of the statute. In sum, § 3486(d) does not immunize relator from defendant's counterclaim.

With those issues in mind, we now turn to each of defendant's counts against relator, the first of which is the breach of fiduciary duty claim. For defendant to state a breach of fiduciary duty claim, it must allege "(1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages proximately resulting from that breach." Zurich Capital Mkts., Inc. v. Coglianese, 332 F. Supp. 2d 1087, 1120 (N.D. Ill. 2004). Defendant claims that relator had an absolute fiduciary duty to notify her superiors of the subpoena and that she breached that duty by keeping secret the subpoena and her production of documents to the government. According to defendant, relator's breach would have been grounds for her termination of

employment. Defendant further contends that, with proper knowledge of the subpoena's existence, it could have refuted the government's suspicions of fraud, thus saving it substantial litigation expenses.

Relator responds that she did not receive the subpoena in her official capacity and thus had no duty to disclose it to defendant. The subpoena was addressed in this manner:

> JACQUELINE SCHULZ[2]
> QA Coordinator, PCI
> Midwestern Regional Medical Center
> 2520 Elisha Avenue
> Zion, Illinois 60009

Defendant asserts that the above address indicates that it, and not relator, was the true target of the subpoena. We do not think the address shows that the subpoena was delivered to relator in her personal capacity, as the language above indicates the subpoena was delivered to relator as agent of defendant, who was the principal and true recipient. The subpoena addressed relator as custodian of the information sought, and in her capacity as custodian, relator held that information in a representative capacity and not a personal capacity. *See* Braswell v. United States, 487 U.S. 99, 109-10 (1988). Relator cites cases that stand for the proposition that an employer may not discipline an employee for complying with a subpoena. But those cases do not change the fact that it was not for relator to comply with the subpoena. Relator also contends that defendant lacks support in the record and, as a matter of law, that the subpoena addressed relator in her official capacity. But at this stage defendant need not identify specific factual support in the record, nor must it cite case law in support of its position. Beanstalk Group v. Am Gen. Corp., 283 F.3d 856, 863 (7th Cir. 2002). All it needs

---

[2] Relator married after she received the subpoena and took her husband's surname.

are allegations that will put relator on notice of the claims, which it has done. <u>Leatherman v. Tarrant County Narcotics and Intelligence Coordination Unit</u>, 507 U.S. 163, 168 (1993).

If the government sought to serve relator in her personal capacity, it would have taken steps to make that intent clear. For example, to keep the subpoena secret from defendant the government should have applied § 3486(a)(6), which provides that a district court may issue an *ex parte* order requiring nondisclosure of a subpoena upon a showing that disclosure would risk destruction of evidence, witness intimidation, or other similar undesired events. The government took no official steps to keep the subpoena secret, and we assume that secrecy was not intended. Thus, after granting all reasonable inferences to defendant, it has alleged adequately that the subpoena did not belong to relator.

Relator also insists that defendant seeks to hold her liable for breach of fiduciary duty because she "refused to violate the law or ignore a government subpoena." That contention mischaracterizes defendant's claim, which asserts that relator breached her fiduciary duty for failing to disclose the subpoena. Defendant claims it would have required relator to disclose the subpoena and not ignore it.

Defendant must now show that it has suffered damages caused by relator's breach. While it has alleged facts that would entitle it to relief, defendant cannot obtain much of the relief that it seeks. It claims that it has incurred substantial litigation costs due to relator's breach, but the fact remains that relator could have pursued a *qui tam* action regardless of her response to the subpoena. According to defendant's own pleadings, relator had access to confidential and proprietary information before receiving the subpoena. If she had passed the subpoena on to her superiors, as defendant suggests she should have done, she still had the ability to sue on behalf of the government. Similarly, relator could bring a *qui tam* action even

if defendant obtained the subpoena and then allayed the government's suspicions over its billing practices, as defendant claims it had the ability to do. Further, relator could have brought her action even if defendant quashed the subpoena. Regardless of the scenario, relator could have brought the *qui tam* action, causing defendant to incur litigation expenses defending against that action. Thus, there is no causal link between the breach of fiduciary duty and the litigation expenses defendant has spent to defend against the *qui tam* action. Defendant also seeks to recover the salary it paid to relator after she received the subpoena but failed to disclose its existence. But that salary was paid in consideration for relator's work, and even if defendant could (and actually would) have fired relator, it would be unjustly enriched if it recouped compensation it paid for a benefit it has already received. Still, defendant survives the motion to dismiss because it asserts that its damages include, but are not limited to, litigation expenses and relator's salary.

We now turn to defendant's count asserting breach of the confidentiality agreement, which is at heart a breach of contract claim. To state a claim for a breach of contract, defendant must allege four elements: (1) a valid and enforceable contract existed; (2) that it has performed all of its contractual obligations; (3) that relator breached the contract; and (4) that the breach caused it damages. ITQ Lata, LLC v. MB Fin. Bank, N.A., 317 F. Supp. 2d 844 (N.D. Ill. 2004). Defendant adequately alleges all but the third element. Relator and the government argue that the confidentiality agreement cannot trump the FCA's strong policy of protecting whistleblowers who report fraud against the government. Their position is correct and the defendant concedes as much. It makes no difference whether we view defendant's counterclaim to be based on relator's response to the subpoena or in retaliation to the *qui tam* claim. Relator could have disclosed the documents to the government under any circumstances, without breaching the confidentiality agreement.

We now reach defendant's novel conversion claim, in which it asserts that relator converted the subpoena for her own benefit by failing to disclose its existence and then secretly responding to it. To state a claim for conversion, defendant must allege that (1) it had an absolute and unconditional right to possession of the property; (2) the relator asserted unauthorized assumption of control or ownership over the property; and (3) that it made a demand for the property. Industrial Hard Chrome, Ltd. v. Hetran, Inc., 90 F. Supp. 2d 952 (N.D. Ill. 2000); Cirrincione v. Johnson, 184 Ill.2d 109, 703 N.E.2d 67, 70, 234 Ill. Dec. 455 (Ill. 1998). At the heart of a conversion claim is the "wrongful deprivation of property from the person entitled to its possession." In re Rosin, 156 Ill. 2d 202, 620 N.E.2d 368, 370, 189 Ill. Dec. 400 (Ill. 1993).

Relator and the government argue that defendant fails to state a claim for conversion because a subpoena may not be owned or converted. Defendant cites several cases suggesting that intangible property may be subject to conversion. Defendant also asserts that it had an ownership interest in the subpoena, that it had an immediate right to possess the subpoena because relator received it in her official capacity, and that relator converted the subpoena by failing to disclose it and then using it in furtherance of her own claims against defendant. We note that defendant does not allege that it made a demand for the subpoena and that relator refused to produce it. But finding that defendant has failed to satisfy the "demand" element would only create incentives for convertors to strive for ultimate secrecy. It would be unfair to require defendant to make a demand for return of the subpoena when it never knew the subpoena existed. We thus turn to the remaining elements of a conversion claim.

The tort of conversion was originally limited to cases involving tangible property, but has since expanded to cases involving intangible property. *See generally* Val D. Ricks, *The Conversion of Intangible Property: Bursting the Ancient Trover Bottle With New Wine*, 1991

B.Y.U. L. REV. 1681. Even if we grant that a subpoena is a form of intangible property, it is not subject to conversion in the same manner as the intangible property involved in the cases cited by defendant because a subpoena requires its recipient to undertake a course of action. In contrast, the information in the converted business documents in FMC Corp v. Capital Cities/ABC, Inc., 915 F.2d 300 (7th Cir. 1990), had independent value. Other forms of intangible property that have been held subject to conversion, such as wire transfers or ownership interests in corporations, have identifiable and intrinsic value that a subpoena lacks.

It is true that relator, by failing to disclose the subpoena's existence, deprived defendant of property to which it was entitled. But the true deprivation here is not of the subpoena itself, but of the opportunity to respond to the subpoena in a manner it deemed fit. Arguing that the subpoena may be converted because relator has usurped defendant's opportunity to respond to it focuses not on the property, but instead on a right derived from the property. Viewing the issue in this light, we see how defendant's argument would not just extend the tort of conversion to a new form of intangible property but would expand the scope to rights that flow from the property. Defendant offers no convincing support to warrant such an expansion. In FMC Corp. the court stated that the deprivation of the possession of property was the gravamen of conversion, and then wrote that the deprivation of the use of information could also support a valid claim for conversion. *Id.* at 304. The court supported that view by concluding that the information in the converted documents was "protectible property." In contrast, it is the information sought by the subpoena rather than the information in the subpoena that is "protectible property." That distinction provides additional support for our

view that defendant does not state a claim for conversion because the right to respond to the subpoena is not subject to conversion.

Defendant's conversion claim also fails because it pleads that relator converted the subpoena "for her own benefit." We can only construe "for her own benefit" as code for relator's *qui tam* claim. Defendant removes all doubt when it writes that relator converted the subpoena "in furtherance of her case against MRMC and the other named Defendants." This count is clearly an indirect attack on the *qui tam* action, which relator was entitled to file and cannot be held liable for pursuing. Thus, defendant fails to state a conversion claim.

The counterclaims rest, ultimately, upon the claim that the failure to disclose the subpoena was wrongful, and a resolution of that issue appears to depend upon how the government chose to proceed. It appears to have proceeded, or so the defendant claims, by issuing a subpoena to a custodian of records in her capacity as agent of the defendant. Such a subpoena normally is a means of securing company records as part of an ongoing investigation. The target may seek to oppose the subpoena or it may cooperate. Ultimately, the government may seek indictments or it may close the investigation without bringing charges. Whether or not a *qui tam* action is filed is an entirely separate matter. If the government is concerned that the target may destroy documents or intimidate witnesses, it must make such a showing to a court in order to secure an *ex parte* order limited in time. That did not happen here.

It could have pursued a different route. If, after consultation with an employee, it had reason to believe that a health care fraud had occurred, it could have sought, without subpoena or with a subpoena personally directed to the employee, production of various records. The public interest in the production of those records trumps any fiduciary

obligation or any confidentiality agreement. But that is not the way the government proceeded.

The government could have obtained the records by either procedure – or at least the defendant has not indicated otherwise. It chose to issue a subpoena addressed, in reality, to the company, or so defendant claims. If so, that procedure, the first described but without the restrictions of an *ex parte* order, obligated the relator to disclose the subpoena to her employer. And because she failed to do so, Count I of the counterclaim to that limited extent survives.

Several other concluding observations are in order. Our analysis above depends entirely on the unique facts presented in this case, and we have interpreted those facts in the light most favorable to defendant. We recognize the government's keen interest for tapping company insiders as it investigates possible instances of fraud – an interest that explains its role as *amicus*. And this order in no way seeks to impede that interest or impair any future investigation in which the government does not rely on denying a target's right to respond to a subpoena. Future insiders may still blow the whistle on fraud and present the government with evidence of that fraud in the "coordinated effort" envisioned by the FCA. Relator was well within her rights to contact the government prior to receiving the subpoena and to file the *qui tam* action, yet defendant states a claim that relator breached her fiduciary duty.

## CONCLUSION

For the foregoing reasons, relator's motion to dismiss is denied as to Count I and granted as to Counts II and III.

James B. Moran
Senior Judge, U.S. District Court

Nov. 10, 2004.