

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF ILLINOIS ex rel. JACKIE GRANDEAU, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 99 C 8287 |
| CANCER TREATMENT CENTERS OF AMERICA, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff-relator Jacqueline Grandeau (relator) brought this *qui tam* action on behalf of the governments of the United States and the State of Illinois, and alleges that defendants engaged in fraudulent billing practices in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733 (FCA), and the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1-8 (IWRPA), and also participated in illegal schemes, violating provisions of the Anti-Kickback statute, 42 U.S.C. § 1320a-7b, and the Stark Act, 42 U.S.C. § 1395nn. Defendants moved to dismiss all claims. The court denied the motion as to the FCA claim, but deferred judgment as to the two remaining claims. Defendants' motion to dismiss is before the court once again, and, for the following reasons, it is granted in part and denied in part.

## BACKGROUND

The relevant factual background is detailed in several prior opinions. *See* United States ex rel. Grandeau v. Cancer Treatment Centers of America, 2004 WL 755893, *1, 2004 U.S. Dist. LEXIS 2799 (N.D. Ill. 2004), United States ex rel. Grandeau v. Cancer Treatment Centers

of America, 350 F. Supp. 2d 765, 768-69 (N.D. Ill. 2004). The relevant procedural background involves defendants' motion to dismiss counts I, II and III, which was brought pursuant to FED. R. CIV. P. 9(b). On June 6, 2003, the court concluded that relator alleged an FCA claim (count I) with sufficient particularity, but deferred judgment on the Anti-Kickback and Stark Act claims (count II) and the IWRPA claim (count III) because those arguments had "been largely lost in the welter of paper." United States ex rel. Grandeau v. Cancer Treatment Centers of America, 2003 WL 21504998, *3, 2003 U.S. Dist. LEXIS 11036 (N.D. Ill. 2003). The parties filed supplemental briefs for counts II and III, which were in turn lost in a subsequent mass of filings, until now, two years later, when the parties brought the outstanding matter to the court's attention.

Defendants observe that the IWRPA claim is analyzed under the same standards as the FCA claim, and concede that as a consequence of the court's conclusion that relator's FCA claim pleads fraud with sufficient particularity, relator's IWRPA claim survives. Since the court will not revisit its ruling on the FCA claim, the only issue is whether count II is deficient as a matter of law. Defendants argue that relator fails to plead with requisite specificity who engaged in unlawful conduct and when those transgressions took place. Defendants also emphasize that the complaint contains no representative examples of alleged wrongdoing. Relator believes that several paragraphs in the complaint are sufficiently specific under Rule 9(b) to provide defendants with fair notice of her claims.

## DISCUSSION

Rule 9(b) provides, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The parties do not dispute

that the Rule 9(b) pleading standard applies to the Anti-Kickback and Stark law claims set forth. Under Rule 9(b), "circumstances" include "the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Bankers Trust Co. v. Old World Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992). "Particularity" means "the who, what, when, where and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 628 (7th Cir. 1999).

The Anti-Kickback and Stark laws "regulate referrals between doctors and hospitals who participate in federal health care programs." United States ex rel. Obert-Hong v. Advocate Health Care, 211 F. Supp. 2d 1045, 1048 (N.D. Ill. 2002). Under the Anti-Kickback statute, it is illegal to knowingly and willfully solicit or receive any remuneration "in return for referring an individual to a person for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(1)(A). It is also illegal to knowingly and willfully offer or pay any remuneration "to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." § 1320a-7b(b)(2)(A).[1] Remuneration includes any kickback, bribe or rebate. Under the Stark Act, a physician who has a financial relationship with an entity may not refer patients to that entity for the furnishing of designated health services. 42 U.S.C. §1395nn(a)(1)(A). Section 1395nn(a)(1)(B) prohibits the entity from presenting or causing to

---

[1] It is also illegal to solicit, receive, offer or pay any remuneration in return for, or in order to purchase, lease or order any goods, facilities, services or items for which payment may be made under a Federal health care program. See § 1320a-7b(b)(1)(B) and (2)(B).

be presented a claim or bill for designated health services that were furnished pursuant to a prohibited referral. Section 1395nn(a)(2) defines "financial relationship" to include "an ownership or investment interest in the entity" or "a compensation arrangement between the physician and the entity." Thus, the Anti-Kickback statute "focuses on the circumstances surrounding the referrals themselves," and the Stark Act "is designed to prevent abusive self-referrals." United States ex rel. Perales v. St. Margaret's Hosp., 243 F. Supp. 2d 843, 848 (C.D. Ill. 2003).

Count II of the third amended complaint incorporates all paragraphs that precede it, but it does not set forth any additional or distinct factual allegations. In her supplemental brief, relator contends that the allegations in count II focus primarily on paragraphs 26, 27, 46, and 48.[2] We thus turn to those paragraphs, and observe that each fails to name specifically any physician who made referrals prohibited by the Stark Act, or any other person who

---

[2] ¶ 26: "The physicians within the MRMC Physician Group, PCI/Patients First are paid by defendants on a salaried basis, and with periodic bonuses to reward them for productivity and patient referrals. The referrals are to defendants and are generally not for work to be performed by the individual physician. In turn, defendants bill and are paid by the government for all the services performed by the individual physicians within the PCI group. All monies paid by the government for the physician services are paid to defendant CTCA or its corporate affiliates and/or agents and owners.

¶ 27: "PCI/Patients First Physicians operated out of the MRMC facility. No rental was charged by the hospital for the PCI use of the hospital, supplies or staff."

¶ 46: "MRMC physicians were paid bonuses at least annually, and other remuneration, based upon revenue collected on their billings, and for patient referrals. This arrangement is not permitted under Stark. The bonus system worked as follows. MRMC contracted to pay physicians on a salaried basis. The bonus was paid in addition to the set salaries. MRMC documented the bonuses paid on individual Form 1099 or W-2 forms, all of which are in the possession of defendants."

¶ 48: "During the course of Relator's employment, Defendants operated a limousine service, owned by defendant Stephenson. The vehicles were used to transport patients and visitors to various shopping centers, including Gurnee Mall. In addition, defendants provided free airline service to transport patients and potential patients between their homes and defendants' facilities. Defendants provided the aforesaid services to for [sic] the purpose of influencing the beneficiaries to select CTCA-MRMC or PCI as their provider. As a result. defendants are obligated to repay to Medicare and Medicaid the payments [along with statutory penalties] received on behalf of beneficiaries who were provided with the above remuneration to induce their selection of provider."

solicited, received, offered, or paid any remuneration in exchange for the referral of a patient. Nor do those paragraphs mention any dates, or a general time frame, when the alleged wrongdoing occurred. *See* Bantsolas ex rel. United States v. Superior Air and Ground Ambulance Transport, Inc., 2004 WL 6097793, *3-4, 2004 U.S. Dist. LEXIS 4540 (N.D. Ill. 2004). Further, the paragraphs fail to provide any representative examples to illustrate the alleged unlawful activity. *See* United States ex rel. Obert-Hong v. Advocate Health Care, 2001 WL 303692, *3, 2001 U.S. Dist. LEXIS 3767 (N.D. Ill. 2001).

Paragraph 26 states that physicians received bonuses for their productivity and patient referrals, but it does not name any physician who received a bonus or made a referral for health care services. This paragraph also fails to distinguish in sufficient detail between bonuses paid for productivity (which are likely non-violative under § 1320a-7b(3)), and those paid in return for illegal referrals. Paragraph 27 is another example of vagueness that measures far short of the particularity requirements set by Rule 9(b). Relator states that defendant Midwest Regional Medical Center (MRMC) allowed defendant Professional Corporation of Illinois, and its successor Patients First (together "PCI"), to use its facilities without paying rental charges, but fails to state, much less allege with specificity, how this was in return for any prohibited referrals. Similar to the general allegations set forth in paragraph 26, paragraph 46 alleges MRMC physicians were paid bonuses in return for their productivity and patient referrals, but fails to provide any representative examples with specific information of who received the bonuses. Additionally, the next paragraph does not support relator's allegations of padded paychecks. Paragraph 47, which is not one of the four

paragraphs relator highlighted, alleges that defendant Robert Cary[3] approved complimentary plastic surgery for the wife of Timothy Birdsall, the director of naturopathy at MRMC, in return for a patient referral that Dr. Birdsall made to MRMC's bone marrow unit. But the prohibited remuneration described in paragraph 47 is entirely distinct from the bonuses paid in the scheme set forth in paragraph 46. Finally, paragraph 48 states that defendants used a limousine service owned by Richard Stephenson[4] to influence prospective patients to select MRMC or PCI as their health care provider. This paragraph contains no allegations discussing referrals made by any physicians, and the remuneration appears to have been received by patients, not by any physician. Even if it is possible to squeeze the allegations contained in paragraph 48 into the scope of § 1320a-7b(2)(B) (paying remuneration to any person to induce that person to purchase a service or item for which payment is made under a Federal health care program), there are no specific names, dates or representative examples, and relator's claim thus fails. *See* Peterson v. Community General Hosp., 2003 WL 262515, *2, 2003 U.S. Dist. LEXIS 1783 (N.D. Ill. 2003).

Relator is not required to plead every instance of fraud in this factually complex case (*see* United States ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39, 47 (D. Mass. 2001); United States ex rel. Harris v. Bernad, 275 F. Supp. 2d 1, 8 (D. D.C. 2003)), but relator alleges Anti-Kickback and Stark Act violations with brush strokes so broad that it is impossible to identify the particularity that Rule 9(b) demands. Unlike the allegations supporting the FCA

---

[3] The complaint states that Cary is the chief operating officer of CTCA, the president and chief executive officer of MRMC.

[4] The complaint also states that Stephenson is the owner and founder of CTCA, its clinics and affiliates.

claim, which included an outline of the allegedly fraudulent scheme and various examples of defendants' conduct, the paragraphs relator focuses on to support count II are not sufficient when necessary. *Cf.* Grandeau, 2003 WL 21504998, *1.

An additional argument made by relator requires brief discussion. Relator argues that compliance with the Anti-Kickback statute is a critical provision of the Medicare statute, and cites this court's decision, United States ex rel. Bidani v. Lewis, 264 F. Supp. 2d. 612 (N.D. Ill. 2003). In Bidani, the relator's FCA claim was based on an implied certification theory that portrayed the defendants' claims as false because they certified compliance with federal statutes when they allegedly violated the Anti-Kickback statute. *Id.* at 614. In contrast, relator does not raise an implied certification argument, and the vitality of the FCA claim does not hinge on the fate of the Anti-Kickback and Stark claims.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted as to count II and denied as to count III.

JAMES B. MORAN
Senior Judge, U. S. District Court

Aug 19, 2005.